**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-2002-RM-BNB

ALLEN & VELLONE, P.C., a Colorado Corporation, and
STRAUS & BOIES, LLP,

      Plaintiffs,

v.

LAURENCE J. PINO,
ENVERGENT CORPORATION, and
JOHN DOE CORPORATION,

      Defendants.

---

**ORDER**

---

      This matter is before the Court on Defendant Laurence J. Pino's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 10) (the "Motion"). The Motion has been fully briefed, and the parties appeared in a non-evidentiary hearing before this Court on January 16, 2014. (ECF No. 43.) As set forth below, the Court GRANTS the Motion without prejudice to Plaintiffs' right to re-file.[1]  Below, the Court sets forth its reasoning.

**I.     FACTS**

      The relevant facts, taken in the flight most favorable to Plaintiff from the Amended Complaint, are as follows:

---

[1] At the hearing, Plaintiffs asked that if the Court was inclined to dismiss the Amended Complaint based on the insufficiency of the allegations, that the court instead consider granting leave to amend. Plaintiffs indicated that they had obtained additional evidence that bolstered their jurisdictional claims. While the Court concludes that it lacks jurisdiction to hear this case based on the current Amended Complaint, C.R.S. § 13-80-11 gives Plaintiffs the opportunity, should they so choose, to commence a new action upon the same cause of action within ninety days of the termination of this action.

1

During the relevant time period that is at issue in this lawsuit, Laurence J. Pino acted as the CEO and President of Dynetech Corporation ("Dynetech").  On April 16, 2008, Dynetech and GlobalTec, LLP ("GlobalTec"), executed a class action settlement agreement in Denver, Colorado, which provided for the payment of the class action plaintiffs' attorneys' fees and expenses by GlobalTec and Dynetech, as "secured by the Security Agreements."  Plaintiffs herein were the attorneys in the referenced class action to whom payments were owed.  Security Agreements were also executed that same day, which granted Plaintiffs a security interest in GlobalTec and Dynetech's "goodwill, contracts, accounts receivable, furniture, fixtures, inventory, equipment, and all other tangible or intangible personal property now owned or hereafter acquired by Debtor and used in connection with its business, and all proceeds and products therefrom."  The Security Agreements also provided that "[i]f any of the Collateral shall be sold, then the proceeds of such sale shall become collateral."  Dynetech made the payments as per the Settlement Agreements for 9 months, but then defaulted on August 1, 2009, with a remaining balance of $1,050,000.00.

The Amended Complaint alleges that "in March of 2009, Defendant Pino, through his control of Dynetech, sold a substantial portion of its property, which was subject to the security agreements, to HBK Investments and Optionetics in exchange for forgiveness of debt and a $3,000,000 cash payment."  In August of 2009, Dynetech completed the sale of more of Plaintiffs' collateral without notifying Plaintiffs.  No further payments were made to Plaintiffs.  On October 1, 2009, Dynetech merged with Tellegenix Corporation ("Tellegenix"), and approximately a week later, Tellegenix filed for Chapter 11 bankruptcy.  Later, the bankruptcy was converted to Chapter 7 and a trustee was appointed.  The Amended Complaint relates that on February 22, 2011:

> the Bankruptcy Court approved the sale of Estate property to an insider, Defendant Pino, subject to all liens, claims, encumbrances, and interests…The insider purchasing the assets from the bankruptcy estate was Envergent Corporation, which is a corporation, controlled by its President, Pino. Defendant Pino was also the former President of Tellegenix Corporation, and is thus an insider of the bankruptcy Debtor.

On October 5, 2011, the Trustee filed a Complaint on behalf of the bankruptcy estate against Plaintiffs and others, asserting claims to avoid lien and preferential transfers. In April 2012, the bankruptcy court approved a settlement between the Trustee and Plaintiffs "wherein a settlement sum was paid to the Trustee but the Plaintiffs' liens were allowed and acknowledged as valid, enforceable, and continuing in the property purchased by Defendant Pino through Envergent." The bankruptcy court ultimately held that there was no applicable automatic stay affecting the lien retained by Plaintiffs.

Plaintiffs commenced the instant suit in Colorado state court on June 20, 2013, and Defendant Pino filed a Notice of Removal removing the action to this Court based on diversity. (ECF No. 1.) In the Amended Complaint, Plaintiffs set forth seven claims for relief: enforcement of lien and request to foreclose, civil conspiracy, two counts of fraudulent transfer, conversion, common law fraud, and aiding and abetting fraud. As to Defendant Pino's individual conduct, Plaintiffs specifically allege the following:

- "Defendant Pino caused Dynetech to transfer the Property with actual intent to hinder, delay or defraud its creditors, including Plaintiffs." (Am. Complaint at 6.)

- "Defendant Pino is liable for the acts taken by both Dynetech and Tellegenix as the President of the companies with authority to sell the assets and authority to determine which creditors would be paid." (*Id*.)

- "Defendant Pino is liable for the damage suffered by Plaintiffs for his failure to compensate Plaintiffs from the proceeds." (*Id*.)

- "Defendant Pino directed Tellegenix to transfer the Collateral and failed to compensate Plaintiffs with the proceeds received from that sale." (*Id*. at 7.)

3

- "By consummating the sale of the Plaintiff's collateral without authorization or payment to Plaintiffs, Defendant Pino exercised dominion of Plaintiffs' property." (*Id.*)

- "Defendant Pino concealed the fact that Dynetech sold the Wizetrade Group to MB Trading Holdings, LLC, and he should have disclosed the sale to Plaintiffs." (*Id.* at 8.)

- "Defendant Pino knew that he was concealing a material fact from Plaintiffs that in equity and good conscience he should disclose." (*Id.*)

- "Plaintiffs did not know prior to the sale of the Collateral that Defendant Pino was planning to sell the Collateral and default on the [class action settlement agreement], and Defendant Pino purposefully kept that information from Plaintiffs." (*Id.*)

- "Defendant Pino perpetrated the concealment in an effort to avoid Plaintiffs' lien claim and claim to the proceeds from the sale." (*Id.*)

- "Defendant Pino's actions in concealing the transfers of Collateral resulted in damage to Plaintiffs." (*Id.*)

- "Defendant Pino knew that his actions constituted fraud and that his actions would cause Plaintiffs to suffer damage." (*Id.*)

- Defendant Pino directed and or substantially assisted the acts of fraud upon Plaintiffs." (*Id.*)

## II.   LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(2) is to test whether the Court has personal jurisdiction over the named parties. The plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). When the district court does not hold an evidentiary hearing before ruling on jurisdiction, "the plaintiff need only make a *prima facie* showing" of personal jurisdiction to defeat a motion to dismiss. *Id.* (citing *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983)). A *prima facie* showing is made where the plaintiff has demonstrated facts that, if true, would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). To defeat the plaintiff's *prima facie* case, a defendant "must present a compelling case

4

demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The Court will accept the well-pled allegations (namely, the plausible, nonconclusory, and nonspeculative facts) of the complaint as true to determine whether Plaintiffs have made a *prima facie* showing that personal jurisdiction exists. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Any factual conflicts must be resolved in the plaintiff's favor. *Wentz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

Colorado's long arm statute extends jurisdiction to the fullest extent permitted by the Due Process clause of the Fourteenth Amendment, thereby obviating the need for a long-arm statutory analysis separate from the due process inquiry. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). In order to determine whether the exercise of personal jurisdiction over Defendant Pino comports with due process, the Court is required to conduct a two-step inquiry. First, does the nonresident Defendant have sufficient "minimum contacts" with Colorado that he should reasonably anticipate being haled into court here; if so, does the exercise of personal jurisdiction over Defendant offend "traditional notions of fair play and substantial justice"? *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

In order to meet the "minimum contacts" standard for specific jurisdiction over a nonresident defendant: (1) that defendant must have "purposefully directed" its activities at residents of the forum state; and (2) the plaintiff's alleged injuries must "arise out of or relate to" those activities. *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008).

## III. DISCUSSION

The relevant inquiry for purposes of resolving the instant motion is whether Defendant Pino in his individual capacity has "minimum contacts" with Colorado such that notions of "fair play and substantial justice" are not offended. *Dudnikov*, 514 F.3d at 1063. As set forth in *Dudnikov*, this Court must take all well-pled allegations, meaning the plausible, nonspeculative facts in the Amended Complaint, as true. *Id.* A nonresident defendant establishes sufficient contacts with the forum state for personal jurisdiction purposes only when that defendant "purposefully avails" himself of the privilege of conducting activities within the forum state. *Id*. at 1071.

As a starting point, it should be noted that all of Defendant Pino's conduct which occurred after the Security Agreements were executed either occurred outside of Colorado or, alternatively, is not alleged to have occurred in Colorado. This includes the asset sales, bankruptcy, purchase of bankruptcy estate assets and other matters. The assumption that, as an officer of one or more corporations, Defendant Pino is subject to jurisdiction wherever the corporations may be, permeates the Amended Complaint.

Defendant Pino argues that "Plaintiffs' entire theory of liability as to Pino is based on Pino's relationship with Dynetech…Plaintiffs have not alleged that Pino has or had any individual contact with Colorado in his individual capacity." (ECF. No. 10 at 4.) In Plaintiffs' Response, they assert that Defendant Pino, during the mediations that led to the class action settlement agreement, personally participated in one or more mediations in the state of Colorado. No such allegation, however, is included in the Amended Complaint.

Even taking into account the allegation, which Defendant Pino independently conceded at the hearing on this matter, that Defendant Pino personally participated in one or more mediation

6

sessions in Colorado on behalf of a corporation, that is insufficient to establish personal jurisdiction in this case. "Jurisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself ... jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state." *Dietz v. Dietz*, No. 11-CV-01692-RBJ-KMT, 2012 WL 1931549 (D. Colo. May 29, 2012) (quoting *Ten Mile Indus. Park v. Western Plains Serv. Corp.,* 810 F.2d 1518, 1527 (10th Cir. 1987)). Other than this limited instance of contact, no other personal contact with Colorado by Defendant Pino is alleged.

Plaintiffs, perhaps recognizing this, argue that where "the commission of a tort forms the basis of personal jurisdiction," the allegation of the commission of the tort itself, where the injury is felt in the forum state, forms a sufficient nexus to satisfy the minimum contacts test. (ECF No. 17 at 7.) Plaintiffs contend that since they "allege that Defendant intentionally and tortiously engaged in conduct that was 'expressly aimed' at Colorado…no more is needed for the assertion of personal jurisdiction in Colorado over the Defendant." (*Id*. at 8.)

Plaintiffs cite the Fifth Circuit opinion in *Mullins v. TestAmerica, Inc*. for the proposition that the "effects" test established in *Calder v. Jones*, 104 S.Ct. 1482 (1984), can and should be applied in instances where the recipient of a fraudulent conveyance is challenging jurisdiction in the forum state. 564 F.3d 386, 398 (5th Cir. 2009). In *Mullins*, the Fifth Circuit affirmed the district court's exercise of jurisdiction where the defendants "purposefully aimed their conduct at…Texas…with the knowledge that their conduct would allegedly impair the rights of a single, major creditor and Texas resident under agreements that center around Texas." *Id*. at 398. While this theory, as posited in the Response and developed in argument at the hearing, is

potentially persuasive, the facts as they appear in the Amended Complaint fall short of the *Mullins* scenario.

In *Mullins*, the Fifth Circuit was skeptical of the notion that the *Calder* effects test establishes personal jurisdiction whenever the recipient of a fraudulent transfer injures a creditor by such action. The court was further skeptical that "personal jurisdiction exists over the recipient of a fraudulent transfer anywhere a complaining creditor files suit simply by virtue of the creditor's residence in that forum." *Id*. at 401. But the court was able to overcome its skepticism based upon evidence that the complaining creditor was targeted and singled out by defendants and that defendants intended to block any asset sale that included a distribution of assets to the complaining creditor. *Id.*

Despite Plaintiffs' suggestions at the hearing that comparable circumstances exist in this case, the Amended Complaint does not so allege. To the contrary, the allegation is that Defendants acted "with actual intent to hinder, delay or defraud its creditors, including Plaintiffs." (Am. Complaint ¶ 45.) Fairly construed, Plaintiffs' allegation is that they—like all other creditors—were negatively affected by Defendant Pino's actions. That is a far cry from the purposeful, targeted actions that were established in *Mullins*.

*Calder* aside, the Amended Complaint simply does not contain sufficient factual allegations that Defendant Pino *personally* engaged in conduct in Colorado such as would justify the exercise of personal jurisdiction. Rather, the Amended Complaint repeatedly treats Defendant Pino and Defendant Envergent, as well as other corporate entities, as though their conduct was inextricably linked and identical. For instance, both the Amended Complaint as well as Plaintiffs' Response to the Motion to Dismiss allege that "Defendant Pino and Envergent purchased the assets" during the bankruptcy proceedings. (ECF No. 17 at 5.) These types of

allegations, while mentioning Defendant Pino specifically by name, do not make clear how Defendant Pino was acting in his personal rather than professional capacity as a corporate officer or otherwise establish why the corporate activities subject Defendant Pino to personal jurisdiction in his individual capacity. There are allegations that Defendant Pino directly and knowingly engaged in fraudulent activity, but these allegations are contained as conclusory recitals within the claims portion of the Amended Complaint, and are not attached to specific factual allegations which would point to individual conduct by Defendant Pino specifically aimed at Colorado.

In short, allegations which would establish a prima facie basis for the exercise of personal jurisdiction against Defendant Pino in his individual capacity are inadequate.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

Defendant's Motion to Dismiss (ECF No. 10) is GRANTED.

DATED this 18th day of March, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge